**BAKER & HOSTETLER LLP**
Heather J. McDonald (HM 3320)
Robertson D. Beckerlegge (RB 1829)
Kevin M. Wallace (KW 1284)
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

Counsel for Plaintiff
Michael Kors, L.L.C.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MICHAEL KORS, L.L.C., <br><br> Plaintiff, <br><br> -against- <br><br> AMUSH ENTERPRISES, LLC; THE CREDIT SHELTER TRUST FOR THE BENEFIT OF SOPHIE GARFINKEL UNDER THE WILL OF JEHUDA GARFINKEL; PEARL GARFINKEL AND STEVEN L. TOPAL, EACH INDIVIDUALLY AND IN THEIR CAPACITIES AS TRUSTEES OF THE CREDIT SHELTER TRUST FOR THE BENEFIT OF SOPHIE GARFINKEL UNDER THE WILL OF JEHUDA GARFINKEL; AM-TEX APPARELS INC.; and JOHN DOES, JANE DOES, and/or XYZ COMPANIES 1-4, <br><br> Defendants. | CIVIL ACTION NO. <br><br> 18 CV _____ |

## COMPLAINT

Plaintiff Michael Kors, L.L.C. ("MK" or "Plaintiff") by and through its undersigned

counsel, for its Complaint against Amush Enterprises, LLC ("Amush Enterprises"), the Credit

Shelter Trust for the Benefit of Sophie Garfinkel Under the Will of Jehuda Garfinkel, Pearl

Garfinkel and Steven L. Topal, each individually and in their capacities as Trustees of the Credit

Shelter Trust for the Benefit of Sophie Garfinkel Under the Will of Jehuda Garfinkel (collectively, the "Trust Defendants"), Am-Tex Apparels Inc. ("Am-Tex"), and John Does, Janes Does, and/or XYZ Companies 1-4 (the John Doe Defendants) alleges as follows:

## STATEMENT OF THE CASE

1.      Plaintiff seeks monetary and injunctive relief against Defendants for numerous causes of action, including but not limited to, (i) direct and contributory trademark counterfeiting, in violation of 15 U.S.C. § 1114; (ii) direct and contributory trademark infringement, in violation of 15 U.S.C. § 1114; (iii) direct and contributory false descriptions/false designations of origin, in violation of 15 U.S.C. § 1125; and (iv) knowingly permitting leased real property to be used for an unlawful trade or business, in violation of N.Y. Real Prop. L. § 231(2).

2.      Certain areas of New York City have long been major distribution hubs for counterfeit goods that are sold throughout the United States.  Wholesale and retail sales of counterfeit goods occur frequently and regularly from locations around the city.  Plaintiff in this case, and trademark holders in general, has been plagued by the sale and distribution of counterfeit goods at locations all over New York City for years.  To combat this illegal activity and protect its world-famous and valuable name, reputation and trademarks, Plaintiff has, at great expense, commenced and led enforcement efforts in and around New York City.  MK regularly works with law enforcement in operations against the individuals and entities selling counterfeit goods bearing its trademarks.  Arrests for trademark counterfeiting have been made routinely by the New York City Police Department and by other agencies.  The Mayor's Office of Special Enforcement for the City of New York has conducted numerous enforcement operations against both the sellers of counterfeit goods and the property owners that lease them the space, enabling the ongoing sale of counterfeit merchandise.

3.     For over a decade, Amush Enterprises and the Trust Defendants, the owners of the building located at 155 West 29th Street, New York, NY 10001 (the "Property"), have turned a blind eye to the ongoing sale of counterfeit goods at the Property.  Amush Enterprises and the Trust Defendants have allowed a revolving door of counterfeiters to rent or lease space at this location since as early as 2007.

4.     Recently, from at least April 3, 2017 through the present, Amush Enterprises and the Trust Defendants have rented or leased space in the basement of the Property to Am-Tex and the John Doe Defendants who are counterfeiters engaged in the sale, offer for sale, manufacture, storage, and/or distribution of counterfeit goods bearing Plaintiff's Federally Registered Trademarks (defined *infra*) from the Property.

5.     As early as April 2017, Am-Tex and the John Doe Defendants have used the space rented in the basement of the Property from Amush Enterprises and the Trust Defendants for their illegal counterfeiting activities.

6.     In April 2017, Plaintiff conducted a civil seizure of counterfeit goods bearing Plaintiff's Federally Registered Trademarks in the space rented or leased by Am-Tex and the John Doe Defendants at the Property.  Despite Plaintiff notifying Amush Enterprises and the Trust Defendants of their tenants' illegal activity, they ignored Plaintiff's correspondence and allowed the counterfeiting activity by Am-Tex and the John Doe Defendants to continue.

7.     In November 2017, Plaintiff again conducted a civil seizure at the Property and again Plaintiff notified Amush Enterprises and the Trust Defendants of their tenants' illegal activity, and they again did nothing to stop the ongoing counterfeiting activity at the Property despite further notice from Plaintiff of the ongoing illegal activity.

8.      Finally, in September 2018, Plaintiff again conducted a civil seizure at the Property and confirmed counterfeiting activity was ongoing.

9.      Since the April 2017 civil seizure through the present, Plaintiff has seized thousands of counterfeit goods bearing Plaintiff's Federally Registered Trademarks from the space at the Property rented or leased by Am-Tex and the John Doe Defendants.

10.      Despite the numerous notices identified in the preceding paragraphs from Plaintiff to Amush Enterprises and the Trust Defendants since 2017, these defendants have done nothing to stop the revolving door of counterfeiters at the Property and there has been no activity to cause Plaintiff to believe it will stop.  Amush and the Trust Defendants must be held accountable for their complicity in these illegal activities.

## JURISDICTION AND VENUE

11.      This Court has original jurisdiction over the subject matter of this civil action pursuant to 15 U.S.C. § 1051, et seq., § 1114(1), § 1121 and 28 U.S.C. §§ 1331 and 1338.

12.      This Court has supplemental jurisdiction over the claims in this Complaint which arise under state statutory and common law pursuant to 28 U.S.C. § 1367(a), since the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

13.      This Court may exercise personal jurisdiction over Defendants pursuant to § 301 of the New York Civil Practice Law and Rules ("CPLR"), because Defendants are domiciled within the State of New York.

14.      Alternatively, this Court may exercise personal jurisdiction over Defendants pursuant to CPLR § 302(a)(1), (2) and (4), because the acts about which Plaintiff complains arise from Defendants' transaction of business within New York State and/or agreement to supply goods

in New York State; Defendants' commission of a tortious act within New York State; and/or Defendants' ownership, use or possession of real property situated within New York State.

15.     Venue is proper in this judicial district under 28 U.S.C. § 1391, because a substantial part of the events or omissions giving rise to the claims alleged by Plaintiff occurred within the City, State and County of New York.

## THE PARTIES

16.     Plaintiff Michael Kors, L.L.C. is a Delaware Limited Liability Company with its principal place of business located at 11 West 42nd Street, New York, New York 10036.

17.     Defendant Amush Enterprises is a New York limited liability corporation with a registered address for service of process of 4424 18th Avenue, Brooklyn, New York 11204.  Upon information and belief, Abraham Moshel is the owner, operator, and/or principal of Amush Enterprises.  Upon information and belief, Mr. Moshel resides at 1409 47th Street, Brooklyn, NY 11219.  Upon information and belief, since at least as early as December 25, 2001, Amush Enterprises has owned at least a one-half interest, as a tenant-in-common with the Trust Defendants, in the Property.

18.     Defendant Pearl Garfinkel is a Trustee of the Credit Shelter Trust for the Benefit of Sophie Garfinkel Under the Will of Jehuda Garfinkel.  Upon information and belief, she resides at 3274 Bedford Avenue, Brooklyn, NY 11210.

19.      Defendant Steven L. Topal is a Trustee of the Credit Shelter Trust for the Benefit of Sophie Garfinkel Under the Will of Jehuda Garfinkel.  Upon information and belief, he resides at 66-36 Yellowstone Boulevard, Forest Hills, NY 11375.

20.     Upon information and belief, since at least as early as January 8, 2007, the Trust Defendants have owned at least a one-half interest, as a tenant-in-common with Amush Enterprises, in the Property.

21.     Upon information and belief, John Doe, Jane Doe, or XYZ Company 1 ("John Doe 1") is an individual or entity operating from a room Plaintiff has designated as "Room 1" in the basement of 155 West 29th Street, New York, NY 10001.  Room 1 is located at the end of the only hallway in the basement of the Property, as shown on the map attached hereto as Exhibit A.  Upon information and belief, since before November 2017, John Doe 1 has rented or leased Room 1 from Amush Enterprises and/or the Trust Defendants.

22.     Since as early as November 2017, John Doe 1 has sold, offered for sale, manufactured, stored, and/or distributed counterfeit goods bearing Plaintiff's Federally Registered Trademarks from Room 1.  Upon information and belief, John Doe 1 continues to operate this "business" from Room 1.

23.     Upon information and belief, John Doe, Jane Doe, or XYZ Company 2 ("John Doe 2") is an individual or entity operating from a room Plaintiff has designated as "Room 2" in the basement of the Property.  Room 2 is located one door down from Room 1 on the right side of the basement hallway as one faces Room 1, as shown on Exhibit A.  Upon information and belief, since before April 2017, John Doe 2 has rented or leased Room 2 from Amush Enterprises and/or the Trust Defendants.

24.     Since as early as April 2017, John Doe 2 has sold, offered for sale, manufactured, stored, and/or distributed counterfeit goods bearing Plaintiff's Federally Registered Trademarks from Room 2.  Upon information and belief, John Doe 2 continues to operate this "business" from Room 2.

25.     Upon information and belief, John Doe, Jane Doe, or XYZ Company 3 ("John Doe 2") is an individual or entity operating from a room Plaintiff has designated as "Room 3" in the basement of the Property.  Room 3 is located two doors down from Room 1 on the right side of the basement hallway as one faces Room 1, as shown on Exhibit A.  Upon information and belief, since before April 2017, John Doe 3 has rented or leased Room 3 from Amush Enterprises and/or the Trust Defendants.

26.     Since as early as April 2017, John Doe 3 has sold, offered for sale, manufactured, stored, and/or distributed counterfeit goods bearing Plaintiff's Federally Registered Trademarks from Room 3.  Upon information and belief, John Doe 3 continues to operate this "business" from Room 3.

27.     Upon information and belief, John Doe, Jane Doe, or XYZ Company 4 ("John Doe 4") is an individual or entity operating from a room Plaintiff has designated as "Room 4" in the basement of the Property.  Room 4 is located to the right of Room 3 on the right side of the basement hallway, as shown on Exhibit A.  Upon information and belief, since as early as 2017, John Doe 4 has rented or leased Room 4 from Amush Enterprises and/or the Trust Defendants.

28.     Since as early as November 2017, John Doe 4 has sold, offered for sale, manufactured, stored, and/or distributed counterfeit goods bearing Plaintiff's Federally Registered Trademarks from Room 4.  Upon information and belief, John Doe 4 continues to operate this "business" from Room 4.

29.     Defendant Am-Tex Apparels Inc. is a New York corporation with its principal business at 155 West 29th Street, Basement, New York, NY 10001.  According to the New York State Department of State, Mr. Bishwajit Majumder is the Chief Executive Office of Defendant

Am-Tex Apparel Inc.  Upon information and belief, Mr. Majumder resides at 2525 Tratman Avenue, Apartment H 33, Bronx, NY 10461.

30.     Am-Tex operates from a room Plaintiff has designated as "Room 5" in the basement of the Property.  Room 5 is located down the hall from Room 4 on the right side of the basement hallway, as shown on Exhibit A.  The door to Room 5 bears a "New York State Police Chiefs Association" shield.  Upon information and belief, since before April 2017, Am-Tex has rented or leased Room 5 from Amush Enterprises and/or the Trust Defendants.

31.     Since as early as April 2017, Am-Tex has sold, offered for sale, manufactured, stored, and/or distributed counterfeit goods bearing Plaintiff's Federally Registered Trademarks from Room 5.  As of September 2018, Am-Tex continues to operate this "business" from Room 5.

32.     Since 2017, Am-Tex and the John Doe Defendants have been doing business in the City and State of New York and have and continue to sell, offered for sale, manufacture, store, and/or distribute counterfeit goods bearing Plaintiff's Federally Registered Trademarks from Rooms 1-5.

33.     The identities of the John Doe Defendants are not presently known, and the Complaint may be further amended, if appropriate, to include the name or names of said individuals and/or companies when such information becomes available.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

## I.     PLAINTIFF AND ITS BUSINESS

34.     MK is a global luxury lifestyle brand led by renowned, award-winning designer Mr. Michael Kors.

35.     Since launching his namesake brand over 30 years ago, Michael Kors has featured distinctive designs, materials and craftsmanship with a jet-set aesthetic that combines stylish

elegance and a sporty attitude.  Mr. Kors's vision has taken the company from its beginnings as an

American luxury sportswear house to a global accessories, footwear and apparel company with a

presence in approximately 100 countries.

36.     MK is the owner of the trade name "Michael Kors", which Plaintiff has used to

identify itself and its products in the United States for over 30 years.

37.     MK is the owner of the entire right, title and interest in and to, *inter alia*, the valid,

subsisting trademarks and uncanceled trademark registrations on the Principal Register of the

United States Patent and Trademark Office which include, but are not limited to, the following:

| TRADEMARK | REGISTRATION DATE | REGISTRATION NUMBER | GOODS |
|---|---|---|---|
|  | December 18, 2007 | 3356080 | Handbags and small leather goods, namely, wristlet bags. |
| **MICHAEL KORS** | June 4, 1996 | 1977507 | Ladies' clothing; namely, dresses, jackets, pants, skirts, shirts, blouses, shorts, sweaters, coats, swimwear. |
| **MICHAEL KORS** | April 1, 1997 | 2049326 | Clothing for use by women; namely, anoraks; aprons; ascots; babushkas; bandanas; bathrobes; belts; blazers; blousons; bodysuits; boleros; boots; boxer shorts; brassieres; briefs; caftans; camisoles; capes; caps; cardigans; chemises; clogs; fur coats; suit coats; corselets; culottes; earmuffs; galoshes; garter belts; girdles; gloves; nightgowns; halter tops; hats; headbands; hosiery; jeans; jogging suits; jumpers; jumpsuits; kerchiefs; kimonos; leggings; leotards; loungewear; mittens; moccasins; mufflers; neckerchiefs; neckties; neckwear; negligees; nightshirts; overalls; overshoes pajamas; panties; pantsuits;  pantyhose; parkas; pedal pushers; peignors; pinafores; playsuits; pocket squares; ponchos; pullovers; raincoats; sandals; scarves; shawls; shorts; undershirts; athletic shoes; gym shorts; sweat shorts; ski suits; slacks; snowsuits; socks; sport coats; sport shirts; stockings; stoles; suits; suspenders; sweat pants; sweat shirts; t-shirts; trousers; tuxedos; underpants; vests; vested suits; and warm-up suits; and, clothing for use by men; namely, anoraks; ascots; bandanas; bathrobes; belts; blazers; boots; boxer shorts; briefs; |

| TRADEMARK | REGISTRATION DATE | REGISTRATION NUMBER | GOODS |
|---|---|---|---|
| | | | capes; caps; cardigans; clogs; fur coats; suit coats; earmuffs; galoshes; gloves; hats; headbands; hosiery; jeans; jogging suits; kerchiefs; leotards; loungewear; mittens; moccasins; mufflers; neckerchiefs; neckties; neckwear; nightshirts; overalls; overshoes; pajamas; pantsuits; parkas; pedal pushers; playsuits; pocket squares; ponchos; pullovers; raincoats; sandals; scarves; shawls; shorts; undershirts; athletic shoes; gym shorts; sweat shorts; ski suits; slacks; snowsuits; socks; sport coats; sport shirts; suits; suspenders; sweat pants; sweat shirts; t-shirts; trousers; tuxedos; vests; vested suits; and warm-up suits. |
| MICHAEL KORS | December 18, 2001 | 2520757 | Handbags, billfolds, credit card cases, key cases, and tote bags. |
| MICHAEL KORS | December 18, 2001 | 2520758 | Eyeglasses, eyeglass cases. |
| MICHAEL KORS | March 12, 2002 | 2547039 | Retail store services in the fields of clothing, jewelry and clothing accessories. |
| MICHAEL KORS | April 22, 2003 | 2708259 | Cosmetics; namely, body lotion, cologne, perfume, and shower gel. |
| MICHAEL KORS | October 17, 2006 | 3160981 | Watches. |
| MICHAEL KORS | November 8, 2011 | 4052748 | Jewelry. |
| MICHAEL KORS | May 14, 2013 | 4334410 | Protective cases, covers and carrying cases for mobile phones, portable media players, personal digital assistants, laptops and tablet computers. |
| MICHAEL KORS ISLAND | September 19, 2006 | 3146355 | Fragrance products, namely eau de parfum. |
| MICHAEL MICHAEL KORS | April 11, 2006 | 3080631 | Eyeglass frames, eyeglasses, sunglasses, eyeglass cases, carrying cases, namely, attaché cases; bags, namely, tote bags; luggage; suitcases; handbags; purses; wallets; men's and women's clothing, namely, dresses, skirts, blouses, pants, jackets, blazers, coats, raincoats, capes, ponchos, scarves, hats, gloves, sweaters, belts, hosiery, bathing suits, halter tops, socks, jeans, warm up suits, sweatshirts, sweatpants, leggings, shorts, slacks, sport coats, sport shirts, suits, t-shirts, tuxedos, vests, ties; undergarments for men and women, namely, boxer shorts, bras, bustiers, camisoles, nightgowns, nightshirts, pajamas, panties, undershirts, underwear; footwear and headwear; belts. |
| MICHAEL MICHAEL KORS | November 8, 2011 | 4052752 | Jewelry and watches. |
| MICHAEL MICHAEL KORS | May 14, 2013 | 4334409 | Protective cases, covers and carrying cases for mobile phones, portable media players, personal digital assistants, laptops and tablet computers. |
| MK MICHAEL KORS | May 27, 2008 | 3438412 | Eyeglass frames, eyeglasses, sunglasses, eyeglass cases, eye shades, protective eye wear and eye wear for sports; handbags; men's and women's clothing, namely, dresses, skirts, blouses, pants, jackets, blazers, coats, raincoats, capes, ponchos, scarves, hats, gloves, |

| TRADEMARK | REGISTRATION DATE | REGISTRATION NUMBER | GOODS |
|---|---|---|---|
| | | | sweaters, belts, hosiery, bathing suits, halter tops, socks, jeans, warm up suits, sweatshirts, sweatpants, leggings, shorts, slacks, sport coats, sport shirts, suits, T-shirts, tuxedos, vests, ties; undergarments for men and women, namely, boxer shorts, bras, bustiers, camisoles, nightgowns, nightshirts, pajamas, panties, undershirts, underwear, footwear and headwear; belts. |
| **MK MICHAEL KORS** | November 18, 2008 | 3535310 | Watches. |

(collectively referred to as "Plaintiff's Federally Registered Trademarks").  Copies of the MK trademark registrations, as listed on the U.S. Patent and Trademark Office website, are attached as Exhibit B.

38.    MK is also the owner of any common law trademarks associated with its products.

39.    Plaintiff's Federally Registered Trademarks are in full force and effect and have been used for years on and in connection with MK's merchandise.

40.    Plaintiff's Federally Registered Trademarks and the goodwill of the business of MK in connection with which the trademarks are used have never been abandoned and are in full force and effect.  MK intends to preserve and maintain its rights with respect to its Federally Registered Trademarks.

## II.    DEFENDANTS AND THEIR BUSINESSES

### A.    *Defendant Amush Enterprises*

41.    Upon information and belief, Amush Enterprises has owned its one-half interest in the Property continuously from at least December 25, 2001 through the present.

42.    Upon information and belief, since at least 2017, Amush Enterprises has acted as the building management company for the Property.

43.    From as early as September 2017 through the present, Amush Enterprises has had actual, specific knowledge its basement tenants at the Property were using the Property as a base

of operations from which to sell, offer for sale, manufacture, store, and/or distribute counterfeit goods Plaintiff's Federally Registered Trademarks.

44.     Despite its actual knowledge of the illegal counterfeiting activity at the Property, Amush Enterprises turned a blind eye to the activities of Am-Tex and the John Doe Defendants at the Property, creating a safe haven and marketplace from which counterfeit goods bearing Plaintiff's Federally Registered Trademarks were and, upon information and belief, continue to be routinely sold.

### B.      *The Trust Defendants*

45.     Upon information and belief, the Trust Defendants have owned their one-half interest in the Property continuously from at least January 8, 2007 through the present.

46.     From as early as April 2017 through the present, the Trust Defendants have had actual, specific knowledge its basement tenants at the Property were using the Property as a base of operations from which to sell, offer for sale, manufacture, store, and/or distribute counterfeit goods Plaintiff's Federally Registered Trademarks.

47.     Despite their actual knowledge of the illegal counterfeiting activity at the Property, the Trust Defendants have turned a blind eye to the activities of Am-Tex and the John Doe Defendants at the Property, creating a safe haven and marketplace from which counterfeit goods bearing Plaintiff's Federally Registered Trademarks were and, upon information and belief, continue to be routinely sold.

### C.      *Am-Tex and the John Doe Defendants*

48.     Upon information and belief, since at least April 2017, Am-Tex and the John Doe Defendants have rented Rooms 1-5 in the basement of the Property.

49.     Since at least April 2017, Am-Tex and the John Doe Defendants have counterfeited, infringed, and, upon information and belief, continue to counterfeit, infringe, and threaten to further counterfeit and infringe Plaintiff's Federally Registered Trademarks by selling, manufacturing, storing, and/or distributing counterfeit goods bearing Plaintiff's Federally Registered Trademarks.  The display of such counterfeit and infringing products by Am-Tex and the John Doe Defendants are unauthorized public displays of products bearing copies of Plaintiff's Federally Registered Trademarks.  The sale, marketing, and distribution of such counterfeit and infringing goods by Am-Tex and the John Doe Defendants are unauthorized distributions of goods bearing copies of Plaintiff's Federally Registered Trademarks.

50.     Long after Plaintiff's use and registration of Plaintiff's Federally Registered Trademarks, Am-Tex and the John Doe Defendants commenced the sale, manufacture, storage, and distribution of goods bearing counterfeits and/or infringements of Plaintiff's Federally Registered Trademarks as those trademarks appear on Plaintiff's products and as shown in the U.S. Trademark Registrations attached to this Complaint as Exhibit B.

51.     Upon information and belief, the activities of Am-Tex and the John Doe Defendants complained of herein constitute willful and intentional infringement of Plaintiff's Federally Registered Trademarks, are in total disregard of Plaintiff's rights, and were commenced and continued in spite of Am-Tex's and the John Doe Defendants' knowledge that the use of any of Plaintiff's Federally Registered Trademarks, or copies or colorable imitations thereof, was and is in direct contravention of Plaintiff's rights.  The use by Am-Tex and the John Doe Defendants of copies of Plaintiff's Federally Registered Trademarks was without Plaintiff's consent, was likely to cause confusion and mistake in the minds of the purchasing public and, in particular, tended to

and did falsely create the impression that the goods sold by the John Doe Defendants were authorized, sponsored, or approved by Plaintiff when, in fact, they were not.

> **D.**   ***Plaintiff's Investigation and Defendants' Activities at the Property***

52.   On or about April 3, 2017, Plaintiff conducted a civil seizure of counterfeit goods from Rooms 2, 3, and 5 in the basement of the Property, seizing significant quantities of counterfeit goods, including but not limited to the following:

   a.   Room 2: 92 MK logos, 41 MK watches, and 29 MK fragrances;

   b.   Room 3: 576 MK watches, 228 MK sunglasses, 190 MK dusters, 108 MK handbags, 37 pairs of MK sandals, 21 MK belts, 16.5 pairs of MK boots, 14 MK wallets, and 10 MK fragrances; and

   c.   Room 5: 599 MK handbags, 189 MK fragrances, 172 MK wallets, 53 MK belts, 38 MK watches, 38 MK logos, 32 MK belt buckles, 5 MK sunglasses, and 3 MK backpacks.

53.   On April 27, 2017, Plaintiff's counsel sent a letter to Ms. Pearl Garfinkel, one of the Trust Defendants, at her last known residence, notifying her of the civil seizure of counterfeit MK goods from the Property on April 3, 2017.

54.   On May 17, 2017, Plaintiff's counsel resent its April, 27, 2017 letter to Ms. Pearl Garfinkel, notifying her of the civil seizure of counterfeit MK goods from the Property on April 3, 2017.

55.   On or about June 12, 2017, after receiving no response to the April 27 or May 17, 2017 letters, Plaintiff's counsel sent a follow-up letter to Ms. Garfinkel at her last known residence and to the Property, reminding her of the April 27 and May 17, 2017 notification letters.

56.   On or about June 12, 2017, Plaintiff's counsel sent a letter to Mr. Steven L. Topal, one of the Trust Defendants, at his last known residence, notifying him of the civil seizure of counterfeit MK goods from the Property on April 3, 2017.

57.     On or about August 14, 2017, after receiving no response to Plaintiff's counsel's prior correspondence, Plaintiff's counsel sent a follow-up letter to (a) Ms. Garfinkel at her last known residence and to the Property and (b) Mr. Topal at his last known residence, reminding them of Plaintiff's counsel's prior correspondence and again notifying them of the April 3, 2017 civil seizure.

58.     On or about August 30, 2017, Plaintiff's counsel spoke with Mr. Topal who confirmed the Trust Defendants' ownership interest in the Property and explained that the building is operated and/or managed by Mr. Abraham Moshel of Amush Enterprises LLC with an address of 1409 47th Street, Brooklyn, NY 11219.

59.     On or about August 30, 2017, Plaintiff's counsel sent an email to Mr. Abraham Moshel of Amush Enterprises regarding the ongoing counterfeiting at the Property.

60.     On or about September 1, 2017, Plaintiff's counsel sent a letter to Mr. Abraham Moshel at Amush Enterprises, notifying him of the civil seizure of counterfeit MK goods from the Property on April 3, 2017.

61.     On October 31, 2017, Plaintiffs dispatched an investigator to the basement of the Property to assess whether or not counterfeit goods bearing Plaintiff's Federally Registered Trademarks were still being sold, manufactured, stored, and/or distributed there.  While in the basement of the Property, the investigator observed counterfeit goods bearing Plaintiff's Federally Registered Trademarks in Rooms 3, 4, and 5.  From Room 3, the investigator made an evidential purchase of counterfeit MK handbags for one hundred United States Dollars ($100.00).  From Room 5, the investigator made an evidential purchase of counterfeit MK handbags for five hundred United States Dollars ($500.00).

62.     On or about November 18, 2017, Plaintiff conducted another civil seizure of counterfeit goods from Rooms 1, 3, 4, and 5 in the basement of the Property, seizing significant quantities of counterfeit goods, including but not limited to the following:

a.     Room 1: 506 MK handbags, 20 MK wallets, 3 MK logos, and 2 MK backpacks;

b.     Room 3: 251 MK logos, 1 MK handbag; and 1 MK wallet;

c.     Room 4: 189 MK sunglasses, 135 MK logos, 116 MK handbags, 74 MK wallets, 37 pairs of MK boots, 20.5 pairs of MK shoes, 10 MK fragrances, and 7 MK backpacks; and

d.     Room 5: 116 MK logos, 3 MK wallets, 1 MK handbag, 1 MK watch, and 1 MK backpack;

63.     On or about December 1, 2017, Plaintiff's counsel sent a letter to both Trust Defendants at the Property, Ms. Garfinkel's last known residence, Mr. Topal's last known residence, and Mr. Topal's last known business address, reminding them of Plaintiff's counsel's prior correspondence, again notifying them of the April 3, 2017 civil seizure, and notifying them of the November 18, 2017 civil seizure.

64.     On or about December 7, 2017, Plaintiff's counsel spoke with Mr. Topal regarding the ongoing counterfeiting at the Property.  On this call, Mr. Topal again confirmed the Trust Defendants' ownership interest in the Property but further explained that Amush Enterprises also had an ownership interest in the building.

65.     On or about December 14, 2017, Plaintiff's counsel sent a letter to Amush Enterprises reminding it of Plaintiff's counsel's prior correspondence, again notifying it of the April 3, 2017 civil seizure, and notifying it of the November 18, 2017 civil seizure.

66.     On or about December 21, 2017, Plaintiff's counsel spoke with Mr. Abraham Moshel, principal of Amush Enterprises, regarding the ongoing counterfeiting at the Property.

67.     On or about January 9, 2018, at Mr. Moshel's request, Plaintiff's counsel sent an email to Mr. Moshel enclosing a map of the basement, photographs of the counterfeit goods seized during the November 18, 2017 civil seizure, and the receipts itemizing the counterfeit goods seized during the November 18, 2017 civil seizure.

68.     On or about August 31, 2018, Plaintiff dispatched an investigator to the basement of the Property to assess whether or not counterfeit goods bearing Plaintiff's Federally Registered Trademarks were still being sold, manufactured, stored, and/or distributed there.  While at Room 5, the investigator was shown counterfeit goods bearing Plaintiff's Federally Registered Trademarks.  The investigator then made an evidential purchase of counterfeit 10 MK handbags for three hundred fifty United States Dollars ($350.00).

69.      On or about September 15, 2018, Plaintiff conducted another civil seizure of counterfeit goods from Room 5 in the basement of the Property, seizing significant quantities of counterfeit goods, including but not limited to 29 MK handbags, 17 MK sunglasses, 11 MK sunglass covers, 4 MK wallets, 2 MK watches, and 2 MK backpacks.

**FIRST CAUSE OF ACTION**

**TRADEMARK COUNTERFEITING AGAINST AM-TEX AND
THE JOHN DOE DEFENDANTS
15 U.S.C. § 1114**

70.     Plaintiff repeats and realleges the allegations of the previous paragraphs as though fully set forth herein.

71.     Am-Tex and the John Doe Defendants knowingly advertised, promoted, distributed, sold and offered for sale goods bearing counterfeit versions of Plaintiff's Federally Registered Trademarks from the Property.

72.     Am-Tex and the John Doe Defendants' use of counterfeit versions of Plaintiff's Federally Registered Trademarks in connection with the advertisement, promotion, distribution, sale and offer for sale of goods that do not originate from Plaintiff is likely to cause confusion, mistake and deception among consumers that the counterfeit goods originate from, are sponsored by, or associated with, Plaintiff.

73.     Am-Tex and the John Doe Defendants' misconduct constitutes the intentional and willful use of counterfeit versions of Plaintiff's Federally Registered Trademarks in connection with the sale, offering for sale, or distribution of goods, in violation of 15 U.S.C. § 1114(1).

74.     Am-Tex and the John Doe Defendants' acts constitute trademark counterfeiting in violation of 15 U.S.C. § 1114.

75.     Upon information and belief, in committing these wrongs, Am-Tex and the John Doe Defendants intentionally and willfully intended to trade on the goodwill associated with Plaintiff's Federally Registered Trademarks.

76.     Upon information and belief, in committing these wrongs, Am-Tex and the John Doe Defendants acted willfully within the meaning of 15 U.S.C. § 1117(c)(2).

77.     Upon information and belief, Am-Tex and the John Doe Defendants have made and will continue to make substantial profits to which they are not entitled in law or equity.

78.     Upon information and belief, Am-Tex and the John Doe Defendants intend to continue their infringing acts, unless restrained by this Court.

79.     Am-Tex and the John Doe Defendants' acts damaged and will continue to damage Plaintiff, and Plaintiff has no adequate remedy at law.

80.     In light of the foregoing, Plaintiff is entitled to injunctive relief prohibiting Am-Tex and the John Doe Defendants from using Plaintiff's Federally Registered Trademarks or any

marks identical and/or confusingly similar thereto for any purpose, and to recover from Am-Tex and the John Doe Defendants all damages, including attorneys' fees, which Plaintiff has sustained and will sustain as a result of such infringing acts, and all gains, profits and advantages obtained by Am-Tex and the John Doe Defendants as a result thereof, in an amount not yet known, as well as the costs of this action pursuant to 15 U.S.C. § 1117(a), attorneys' fees and treble damages pursuant to 15 U.S.C. § 1117(b), and/or statutory damages pursuant to 15 U.S.C. § 1117(c).

<u>**SECOND CAUSE OF ACTION**</u>

**TRADEMARK INFRINGEMENT AGAINST AM-TEX AND**
**THE JOHN DOE DEFENDANTS**
**15 U.S.C. § 1114**

81.     Plaintiff repeats and realleges the allegations of the previous paragraphs as though fully set forth herein.

82.     Plaintiff's Federally Registered Trademarks are nationally recognized, including within the Southern District of New York, as being affixed to goods and merchandise of the highest quality.

83.     The registrations embodying Plaintiff's Federally Registered Trademarks are in full force and effect and Plaintiff has authorized responsible manufacturers to produce, and vendors to sell, merchandise with these trademarks.

84.     Am-Tex and the John Doe Defendants' unauthorized use of Plaintiff's Federally Registered Trademarks in commerce and advertising constitutes false designation of origin and a false representation that the goods are manufactured, offered, sponsored, authorized, licensed by or otherwise connected with Plaintiff or come from the same source as Plaintiff's goods and are of the same quality as that assured by Plaintiff's Federally Registered Trademarks.

85.     Am-Tex and the John Doe Defendants' infringing use of Plaintiff's Federally Registered Trademarks is without Plaintiff's permission or authority and is in total disregard of Plaintiff's rights to control their trademarks.

86.     Am-Tex and the John Doe Defendants' activities are likely to lead to and result in confusion, mistake or deception, and are likely to cause the public to believe that Plaintiff has produced, sponsored, authorized, licensed or is otherwise connected to or affiliated with Am-Tex and the John Doe Defendants.

87.     Upon information and belief, Am-Tex and the John Doe Defendants' acts are deliberate and intended to confuse the public as to the source of Am-Tex and the John Doe Defendants' goods or services and to injure Plaintiff and reap the benefit of Plaintiff's goodwill.

88.     As a direct and proximate result of Am-Tex and the John Doe Defendants' willful and unlawful conduct, Plaintiff has been injured and will continue to suffer injury to its business and reputation unless Am-Tex and the John Doe Defendants are restrained by this Court from infringing Plaintiff's Federally Registered Trademarks.

89.     Plaintiff has no adequate remedy at law.

90.     In light of the foregoing, Plaintiff is entitled to injunctive relief prohibiting Am-Tex and the John Doe Defendants from using Plaintiff's Federally Registered Trademarks or any marks identical and/or confusingly similar thereto, for any purpose, and to recover from Am-Tex and the John Doe Defendants all damages, including attorneys' fees, which Plaintiff has sustained and will sustain as a result of such infringing acts, and all gains, profits and advantages obtained by Am-Tex and the John Doe Defendants as a result thereof, in an amount not yet known, as well as the costs of this action pursuant to 15 U.S.C. § 1117(a), attorneys' fees and treble damages pursuant to 15 U.S.C. § 1117(b), and/or statutory damages pursuant to 15 U.S.C. § 1117(c).

### THIRD CAUSE OF ACTION

### FEDERAL TRADEMARK DILUTION AGAINST AM-TEX AND
### THE JOHN DOE DEFENDANTS
### 15 U.S.C. § 1125(c)

91.    Plaintiff repeats and realleges the allegations of the previous paragraphs as though fully set forth herein.

92.    Plaintiff is the exclusive owner of its Federally Registered Trademarks as set forth above.

93.    Am-Tex and the John Doe Defendants' use of Plaintiff's Federally Registered Trademarks on the counterfeit goods they sell constitutes Am-Tex and the John Doe Defendants' commercial use in commerce of Plaintiff's Federally Registered Trademarks.

94.    These marks have been used for years and are so globally recognized and associated with Plaintiff that they are entitled to be recognized as famous and distinctive under 15 U.S.C. § 1125(c).

95.    Plaintiff's Federally Registered Trademarks have come to have a secondary meaning indicative of origin, relationship, sponsorship and/or association with Plaintiff and its distinctive reputation for high quality.  The purchasing public is likely to attribute to Plaintiff Am-Tex and the John Doe Defendants' use of Plaintiff's Federally Registered Trademarks as a source of origin, authorization and/or sponsorship for the products Am-Tex and the John Doe Defendants sell, and further, purchase Am-Tex and the John Doe Defendants' products in the erroneous belief that Am-Tex and the John Doe Defendants are associated with, sponsored by or affiliated with Plaintiff, when they are not.

96.    Plaintiff has not authorized or licensed the use of Plaintiff's Federally Registered Trademarks to Am-Tex and the John Doe Defendants.

97.     Am-Tex and the John Doe Defendants' unauthorized use of Plaintiff's Federally Registered Trademarks in their marketing, sale and distribution of counterfeit products are diluting the distinctive quality of Plaintiff's Federally Registered Trademarks and the goodwill associated therewith in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(c).

98.     Such conduct has injured Plaintiff and that injury will continue unless the Court enjoins Am-Tex and the John Doe Defendants from committing further wrongful acts.

99.     Upon information and belief, Am-Tex and the John Doe Defendants intentionally and willfully utilized Plaintiff's Federally Registered Trademarks and traded on Plaintiff's reputation and goodwill.

100.    Plaintiff has no adequate remedy at law and is suffering irreparable harm and damage as a result of the aforesaid acts by Am-Tex and the John Doe Defendants in an amount thus far not determined.

## FOURTH CAUSE OF ACTION

### FALSE DESIGNATION OF ORIGIN AND FALSE ADVERTISING AGAINST AM-TEX AND THE JOHN DOE DEFENDANTS
### 15 U.S.C. § 1125(a)

101.    Plaintiff repeats and realleges the allegations of the previous paragraphs as though fully set forth herein.

102.    Am-Tex and the John Doe Defendants have, in connection with their goods, used in commerce, and continue to use in commerce, Plaintiff's Federally Registered Trademarks.

103.    Am-Tex and the John Doe Defendants have affixed, applied and used in connection with their sale of goods false designations of origin and false and misleading descriptions and representations, including Plaintiff's Federally Registered Trademarks, which tend falsely to

describe the origin, sponsorship, association or approval by Plaintiff of the goods sold by Am-Tex and the John Doe Defendants.

104.    Am-Tex and the John Doe Defendants have used one or more of Plaintiff's Federally Registered Trademarks with full knowledge of the falsity of such designations of origin, descriptions and representations, all to the detriment of Plaintiff.

105.    Am-Tex and the John Doe Defendants' use of Plaintiff's Federally Registered Trademarks on the counterfeit goods constitutes false descriptions and representations tending to falsely describe or represent Am-Tex and the John Doe Defendants and their products as being authorized, sponsored, affiliated or associated with Plaintiff.

106.    Am-Tex and the John Doe Defendants have used one or more of Plaintiff's Federally Registered Trademarks on counterfeit goods with the express intent to cause confusion and mistake, to deceive and mislead the purchasing public, to trade upon the high quality reputation of Plaintiff and to improperly appropriate for themselves the valuable trademark rights of Plaintiff.

107.    Am-Tex and the John Doe Defendants' aforesaid acts constitute the use in commerce of false designations of origin and false and/or misleading descriptions or representations, tending to falsely or misleadingly describe and/or represent Am-Tex and the John Doe Defendants' products as those of Plaintiff in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

108.    Am-Tex and the John Doe Defendants' wrongful acts will continue unless enjoined by this Court.

109.    Plaintiff has no adequate remedy at law and is suffering irreparable harm and damage as a result of the aforesaid acts in an amount thus far not determined.

## FIFTH CAUSE OF ACTION

### INJURY TO BUSINESS REPUTATION AGAINST AM-TEX AND
### THE JOHN DOE DEFENDANTS
### NY GBL § 360-1

110.    Plaintiff repeats and realleges the allegations of the previous paragraphs as though fully set forth herein.

111.    Due to Plaintiff's extensive sales and significant marketing and promotional activities, Plaintiff's Federally Registered Trademarks have achieved widespread acceptance and recognition among the consuming public throughout the United States.

112.    Plaintiff's Federally Registered Trademarks are arbitrary and distinctive and identify Plaintiff as the source and origin of the goods on which Plaintiff's Federally Registered Trademarks appear.

113.    Am-Tex and the John Doe Defendants have caused and will continue to cause irreparable injury to Plaintiff's goodwill and business reputation, in violation of New York General Business Law § 360-1.

114.    In light of the foregoing, Plaintiff is entitled to injunctive relief prohibiting Am-Tex and the John Doe Defendants from using Plaintiff's Federally Registered Trademarks, and to recover all damages, including attorneys' fees, which Plaintiff has sustained and will sustain, and all gains, profits and advantages obtained by Am-Tex and the John Doe Defendants as a result of their infringing acts alleged above in an amount not yet known as well as the costs of this action.

## SIXTH CAUSE OF ACTION

### COMMON LAW TRADEMARK INFRINGEMENT AGAINST
### AM-TEX AND THE JOHN DOE DEFENDANTS

115.    Plaintiff repeats and realleges the allegations of the previous paragraphs as though fully set forth herein.

116.     Plaintiff owns all right, title, and interest in and to Plaintiff's Federally Registered Trademarks, including all common law rights in those marks.

117.     Am-Tex and the John Doe Defendants, without Plaintiff's authorization, have used and are continuing to use spurious designations that are identical to, substantially indistinguishable from, or confusingly similar to Plaintiff's Federally Registered Trademarks.

118.     Am-Tex and the John Doe Defendants' foregoing acts are intended to cause, have caused, and are likely to continue to cause confusion, mistake, and deception among consumers, the public, and the trade as to whether Am-Tex and the John Doe Defendants' goods originate from, are affiliated with, sponsored by, or endorsed by Plaintiff.

119.     Am-Tex and the John Doe Defendants' acts constitute trademark infringement in violation of the common law of the State of New York.

120.     Plaintiff has been irreparably harmed and will continue to be irreparably harmed as a result of Am-Tex and the John Doe Defendants' unlawful acts unless they are permanently enjoined from their unlawful conduct.

121.     Plaintiff has no adequate remedy at law.

### SEVENTH CAUSE OF ACTION

**CONTRIBUTORY TRADEMARK COUNTERFEITING, TRADEMARK INFRINGEMENT, TRADEMARK DILUTION AND FALSE DESIGNATIONS OF ORIGIN AGAINST DEFENDANTS AMUSH ENTERPRISES AND THE TRUST DEFENDANTS**

122.     Plaintiff repeats and realleges the allegations of the previous paragraphs as though fully set forth herein.

123.     Am-Tex and the John Doe Defendants have committed direct acts of trademark counterfeiting, trademark infringement, use of false designations of origin, and trademark dilution.

Counterfeit MK merchandise was displayed and offered for sale and sold by Am-Tex and the John Doe Defendants at the Property from at least April 3, 2017 through September 15, 2018.

124.    Since 2017, Amush Enterprises and the Trust Defendants have had actual, specific knowledge that Am-Tex and the John Doe Defendants were using the Property as a base of operation from which to sell counterfeit goods – including goods of inferior quality – that bear counterfeit versions of Plaintiff's Federally Registered Trademarks.

125.    Despite such actual and specific knowledge, from at least April 2017 through September 15, 2018, Amush Enterprises and the Trust Defendants knowingly continued to permit and condone Am-Tex and the John Doe Defendants' use of the Property as a base of operation from which to sell goods bearing counterfeit versions of Plaintiff's Federally Registered Trademarks.

126.    From at least April 2017 through September 15, 2018, Amush Enterprises and the Trust Defendants turned a blind eye to the activities of Am-Tex and the John Doe Defendants at the Property, creating a safe haven and marketplace from which counterfeit goods bearing Plaintiff's Federally Registered Trademarks were routinely sold.

127.    Amush Enterprises and the Trust Defendants received direct financial benefit through their rental or lease of the Property to Am-Tex and the John Doe Defendants.

128.    Since April 2017, Amush Enterprises and the Trust Defendants had the ability to prevent others from using the Property as a base from which to sell goods bearing counterfeit versions of Plaintiff's Federally Registered Trademarks, yet they neglected to do so.

129.    Despite having this ability, from at least April 2017 through September 15, 2018, Amush Enterprises and the Trust Defendants repeatedly failed to take reasonably adequate measures to ensure that the Property was not used by sellers of counterfeit goods.

130.    From at least April 2017 through September 15, 2018, Amush Enterprises and the Trust Defendants provided Am-Tex and the John Doe Defendants with the means and instrumentality necessary to sell counterfeit goods from the Property and during this time period, benefited from the sale of counterfeits.

131.    Acting with the foregoing actual and constructive knowledge, from at least April 2017 through September 15, 2018, Amush Enterprises and the Trust Defendants enabled, facilitated, perpetuated, and materially contributed to Am-Tex and the John Doe Defendants' unlawful acts.

132.    Amush Enterprises and the Trust Defendants are contributorily liable to Plaintiff for their participation in the unlawful acts of the John Doe Defendants that took place at the Property from April 3, 2017 through September 15, 2018.

133.    As a result of Amush Enterprises and the Trust Defendants' willful and unlawful conduct, Plaintiff has been injured.

134.    Amush Enterprises and the Trust Defendants' acts have damaged Plaintiff, and Plaintiff has no adequate remedy at law.

135.    In light of the foregoing, Plaintiff is entitled to recover from Amush Enterprises and the Trust Defendants all damages, including attorneys' fees, which Plaintiff has sustained and will sustain, as a result of the unlawful acts of Am-Tex and the John Doe Defendants that took place at the Property from April 3, 2017 through September 15, 2018.

136.    As a result of such unlawful acts, Plaintiff is entitled to all gains, profits and advantages obtained by Amush Enterprises and the Trust Defendants as a result thereof, in an amount not yet known, as well as the costs of this action pursuant to 15 U.S.C. § 1117(a), attorneys'

fees and treble damages pursuant to 15 U.S.C. § 1117(b), and/or statutory damages pursuant to 15 U.S.C. § 1117(c).

**EIGHTH CAUSE OF ACTION**

**PRIVATE RIGHT OF ACTION AGAINST**
**DEFENDANTS AMUSH ENTERPRISES AND THE TRUST DEFENDANTS**
**N.Y. REAL PROP. L. § 231**

137.    Plaintiff repeats and realleges the allegations of the previous paragraphs as though fully set forth herein.

138.    The manufacture, distribution, sale or offer for sale of goods bearing counterfeit trademarks is an unlawful trade or business under New York law.

139.    Since 2017, Amush Enterprises and the Trust Defendants knowingly leased or gave possession of the Property to be used or occupied, in whole or in part, for the manufacture, distribution, sale or offer for sale of goods bearing counterfeit trademarks.

140.    Since 2017, Amush Enterprises and the Trust Defendants knowingly permitted the Property to be used, in whole or in part, for the manufacture, distribution, sale or offer for sale of goods bearing counterfeit trademarks.

141.    By reason of the foregoing, pursuant to N.Y. Real Prop. L. § 231(2), Amush Enterprises and the Trust Defendants are jointly and severally liable to Plaintiff for all damages resulting from the unlawful trademark counterfeiting activities of Am-Tex and the John Doe Defendants that took place at the Property from April 3, 2017 through September 15, 2018.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully prays that this Court enter judgment against Defendants as follows:

*Against Am-Tex and the John Doe Defendants:*

A.      Granting temporary, preliminary and permanent injunctive relief restraining Am-Tex and the John Doe Defendants, their agents, servants, employees, officers, associates, attorneys, and all persons acting by, through, or in concert with any of them, from:

(1)      Using Plaintiff's Federally Registered Trademarks or any marks confusingly similar thereto, in connection with the manufacturing, distribution, advertising, offering for sale, and/or sale of merchandise;

(2)      Committing any other act which falsely represents or which has the effect of falsely representing that the goods and services of Am-Tex and the John Doe Defendants are licensed by, authorized by, offered by, produced by, sponsored by, or in any other way associated with, Plaintiff;

(3)      Otherwise infringing upon Plaintiff's Federally Registered Trademarks;

(4)      Otherwise diluting Plaintiff's Federally Registered Trademarks;

(5)      Unfairly competing with Plaintiff; and

(6)      Leasing or subleasing space to any tenant who is engaged in the manufacturing, purchasing, production, distribution, circulation, sale, offering for sale, importation, exportation, advertisement, promotion, display, shipping, or marketing of products that bear Plaintiff's Federally Registered Trademarks, or any other marks confusingly similar to substantially similar thereto;

B.      Awarding Plaintiff all of Am-Tex and the John Doe Defendants' profits and all damages sustained by Plaintiff as a result of Am-Tex and the John Doe Defendants' wrongful acts,

and such other compensatory damages as the Court determines to be fair and appropriate pursuant to 15 U.S.C. § 1117(a);

C. Awarding treble damages in the amount of Am-Tex and the John Doe Defendants' profits or Plaintiff's damages, whichever is greater, for willful infringement pursuant to 15 U.S.C. § 1117(b);

D. Awarding applicable interest, costs, disbursements and attorneys' fees, pursuant to 15 U.S.C. § 1117(b); and

E. Awarding Plaintiff statutory damages pursuant to 15 U.S.C. §1117(c).

***Against Defendants Amush Enterprise and the Trust Defendants:***

A. Finding Amush Enterprises and the Trust Defendants contributorily liable for Am-Tex and the John Doe Defendants' counterfeiting of Plaintiff's Federally Registered Trademarks and for any damages resulting from Am-Tex and the John Doe Defendants' activities complained of herein from April 3, 2017 through September 15, 2018, including, but not limited to, actual damages, statutory damages, treble damages, interest, costs, disbursements and attorneys' fees.

***Against all Defendants:***

A. Awarding actual damages suffered by Plaintiff as a result of Defendants' acts;

B. Ordering an accounting by Defendants of all gains, profits and advantages derived from their wrongful acts;

C. Ordering Defendants to disgorge their profits;

D. Awarding Plaintiff punitive damages in connection with their claims under New York law; and

E. That the Court award Plaintiff such other and further relief as it deems proper.

Dated: October 12, 2018
       New York, New York

**BAKER & HOSTETLER LLP**

By: _____
    Heather J. McDonald (HM 3320)
    Robertson D. Beckerlegge (RB 1829)
    Kevin M. Wallace (KW 1284)
    45 Rockefeller Plaza
    New York, New York  10111
    Tel: (212) 589-4200
    Fax: (212) 589-4201

    *Counsel for Plaintiff*
    *Michael Kors, L.L.C.*